UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 15-10131-NMG |
| | ) | |
| | ) | |
| IFTIKAR AHMED | ) | JUNE 6, 2019 |
| Defendant, | ) | |
| | ) | |

## PROPOSED INTERVENOR'S OPPOSITION TO THE US' MOTION FOR DECLARATION OF BOND FORFEITURE [DOC. #293][1]

Ms. Shalini Ahmed ("Proposed Intervenor"), the spouse of Defendant Iftikar Ahmed, and the co-signer of the Bond (as she is the co-owner of the home which secured the Bond) and a *pro se* interested party, respectfully submits this Opposition to the US' Motion for Declaration of Bond Forfeiture [Doc. #293, "Motion"] should the Honorable Judge grant Ms. Ahmed's Motion to Intervene [Doc. #295, #296]. Ms. Ahmed further requests that the US' Motion be denied, or in the alternative that the Bond Forfeiture be vacated or set aside or the amount reduced, or that the Declaration of Bond Forfeiture be stayed until appeals in another matter conclude. Ms. Ahmed reserves all rights to all issues.[2]

## INTRODUCTION

Ms. Ahmed wishes to give the Court the background involving a complete asset freeze on

---

[1] "ECF" refers to the docket of *SEC v Ahmed, et al.*, 15-cv-675 (D. Conn) ("CT Case"), whereas "Doc." refers to this Court's docket.

[2] Ms. Ahmed also does not waive any privileges by way of this Opposition.

Defendant's and Ms. Ahmed's assets and a litigation stay in a civil matter *SEC v. Iftikar Ahmed, et al*, Case 3:15-cv-00675-JBA (D. Conn) ("CT Case"), Ms. Ahmed's cooperation in this instant matter, the retention of the Defendant in another country that was caused by his attempt to return to the United States, the government's actions and opposition to the release of any funds for the retention of counsel for Defendant, excessive penalties being levied, and any other information that may impact the Court's determination relating to Motion. Ms. Ahmed requests that the US' Motion be denied, or in the alternative the Bond Forfeiture vacated or set aside or the amount reduced, or that the Declaration of Bond Forfeiture be stayed until appeals in the CT Case conclude.

## BACKGROUND

Two cases that impact the Court's determination of this matter are: a civil matter *SEC v. Ahmed et al.*, 15-cv-675 (D. Conn) ("CT Case") and a pending criminal matter in India due to the Defendant's attempt to return to the United States and whereby the Defendant cannot leave the jurisdiction of India.

Ms. Ahmed is *pro se* and does not know the proper standards that Courts use to assess if a bond should be forfeited. However, Ms. Ahmed, based on her limited research, believes that the First Circuit has adopted four factors[3] to decide whether a bond should be forfeited, which serve to determine whether "justice does not require bail forfeiture." Those factors are:

(1) The willfulness of the defendant's breach of conditions;

(2) The participation of the sureties in apprehending the defendant;

(3) The cost, inconvenience and prejudice suffered by the government as a result of the defendant's breach; and

(4) Any explanation or mitigating facts.

---

[3] In *United States v. Donlon*, 909 F.2f 650, 657 (1st Cir. 1990).

2

In this Opposition, Ms. Ahmed provides information in an effort to address the four factors should the Court use those in its determination of setting aside the forfeiture of bond and/or granting the relief requested by Ms. Ahmed in this Opposition.  Ms. Ahmed also gives this information to the Court as even if the four factors are not relevant, the information may help the Court when it makes its determination on the US' Motion.

Ms. Ahmed specifically addresses (1) the Civil Proceeding in Connecticut; (2) Defendant's Attempt to Return and Detention as a Result; (3) Ms. Ahmed's Cooperation; (4) the Government's Lack of Support for Release of Funds to Retain Counsel for Defendant; (5) A Forfeiture Will Result in an Excessive Penalty on Ms. Ahmed and her Three Minor Children; (6) Appeal Pending in CT Case could Allow for Additional Funds Such that the Home Itself does Not Need to be Forfeited; and (7) the Court has the Jurisdiction to Grant Such Prayer as Stated Within.

## ARGUMENTS

Federal Rule of Criminal Procedure 46(f) applies to bail forfeitures and states that "[t]he court may *set aside in whole or in part a bail forfeiture* upon any condition the court may impose if... it appears that justice does not require bail forfeiture." (emphasis added)

In addition, 18 U.S.C. § 3146(d) states that "[i]f a person fails to appear before a court as required... the judicial officer *may* ... declare any property designated pursuant to that section to be forfeited to the United States." (emphasis added)

Thus, the statutes that the government relies on in its Motion allow the Court, in its discretion, to set aside in whole or in part a bail forfeiture (Rule 46(f)(2)(B) of the Federal Rules of Criminal Procedure) and also states that a Court *may*, but does not have to, declare a property forfeited (18 U.S.C. § 3146(d)).

Ms. Ahmed requests that the Court consider setting aside bail forfeiture for the reasons stated within, as per Rule 46(f)(2)(B) of the Federal Rules of Criminal Procedure and the discretion awarded by 18 U.S.C. § 3146(d).

## I.    CIVIL PROCEEDING IN CONNECTICUT

The US' Motion violates another Court's Orders of an Asset Freeze and a litigation stay. In addition, that other Court has frozen the entirety of the Defendant and Relief Defendants' assets in an amount substantially greater than the judgment amount in that case (and the bond value here) and there is an appeal pending which may further lower that judgment amount, allowing Ms. Ahmed to satisfy the bond requirement without the forfeiture of the home where she and her three minor children currently reside.

There is a civil proceeding in a District Court in the District of Connecticut which has, since May 7, 2015, frozen the entirety of assets belonging to Mr. Ahmed, Ms. Ahmed and their three minor children, amongst other entities. That case is *SEC v. Iftikar Ahmed, et al*, Case 3:15-cv-00675-JBA ("CT Case"). Ms. Ahmed, her three minor children and a number of their entities have been named as Relief Defendants in that civil CT case, where Mr. Ahmed is the sole Defendant. All of the Relief Defendants' assets have been frozen for the pendency of the litigation of the CT case (since May 2015) and continue to remain frozen.[4] The Court in the CT Case ("CT Court") has appointed a Receiver to secure the Defendant's judgment in the CT Case, pending appeal.   Almost the entirety of the Relief Defendants' assets have been deemed appropriate to satisfy the Defendant's judgment in that matter.  The Relief Defendants have filed

---

[4] There is at least $90 million worth of assets frozen for a judgment of $64.4 million, plus an unknown amount of interest/gains. The Court has continued the asset freeze as a "*supersedeas* bond" pending appeal.  The $90 million amount and the judgment do not include at least $35 million of allegedly forfeited assets already seized by the alleged victim. These, and other issues, are under appeal.

a timely notice of appeal in the Second Circuit.

### A. Asset Freeze

A preliminary injunction order subsequently issued after the assets were frozen on May 7, 2015. [ECF. #113; "Ruling and Order Granting Preliminary Injunction"] ("No person or entity... shall take any action to interfere with the asset freeze, including but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order...") (*Id.*, p. 21)

The amount of $9,000,000 or the home that the government seeks to forfeit are part of the asset freeze, which continues and remains in effect today. Ms. Ahmed and her three minor children currently reside in the home.

### B. Receiver Order Staying All Civil Litigation

In addition, a Receiver was appointed on December 20, 2018 in the same CT Case. [ECF #1070, "Order Appointing Receiver"]. The Receiver Order stays litigation against the Defendants, including the Relief Defendants in the CT case. The Receiver Order in part states that:

> "22. As set forth below, the following civil proceedings...are stayed until further Order of this Court: All civil legal proceedings of any nature... (a) against the Receiver... (b) to obtain possession of property of the Receivership Estate... (c) against any of the Defendants..." [ECF #1070 p. 13]

### C. The Nature of the Appearance Bond

While appearance bonds are used to secure the appearance of a Defendant in a criminal matter, the actual request for declaration of a bond forfeiture is civil in nature. See *United States v. Roher*, 706 F.2d 725, 726-27 (5th Cir. 1983) (holding that a bond forfeiture proceeding under Rule 46(e) is essentially a civil proceeding). See *United States v. Plechner*, 577 F.2d 596 (9th Cir. 1978) (Holding that a motion by the government in a criminal case to enforce a bond

5

forfeiture was civil, not criminal, in nature, and thus, is a civil proceeding and the appeal was governed by the rule for civil cases, Rule 4(B) of the Federal Rules of Appellate Procedure). See *United States v. Jackson*, 691 F.2d 478, 479 (11th Cir. 1982) ("...we find that the enforcement of a bond forfeiture is a civil matter...") Also see *United States v. Brouillet*, 736 F.2d 1414, 1415 (10th Cir. 1984) (disavowing earlier decision in another matter that a forfeiture of bond proceeding is criminal and now stating it to be civil in nature); See *United States v. Martinez* 613 F.2d 473, 482 (3d Cir. 1980), n. 30 ("The action on the bond is a civil proceeding, though it arises from a criminal one." citing *United States v. Plechner*, 577 F.2d 596, 597 (9th Cir. 1978)).

Thus, the filing of the US' Motion for Declaration of Bond Forfeiture violates these two Orders of the District Court of Connecticut and must be denied on this basis alone.

## II.     DEFENDANT'S ATTEMPT TO RETURN AND DETENTION AS A RESULT

In addition, the Defendant, who is currently in India, cannot leave the jurisdiction of India due to a pending criminal case there which has resulted from Defendant's attempt to return to the United States. The Defendant has informed the CT Court of his situation, and it is Ms. Ahmed's understanding that Mr. Neil Gallagher in the DOJ's MA office has also been aware of the situation.

### A. Defendant's Attempt to Return to the United States

Defendant was previously represented by counsel in the CT Case, Mr. Alex Lipman, who subsequently withdrew from the CT case due to the CT Court's denial of funds to be released for Defendant's representation. As per declaration of Mr. Lipman, "[O]n or about May 22, 2015, Mr. Ahmed was arrested in India by the Foreign Residents Registration Office in connection

with unlawful entry into India." [ECF #97-1 at 2; "Declaration of Alex Lipman"]

Also, as per Mr. Lipman, Defendant attempted to return to the United States: "Now, as the Court is aware, I think, Mr. Ahmed went to India. When he was in India, he went to the U.S. Consulate and asked for a passport. This was within days of arriving there. They gave him a passport... But with that passport he went to whatever local office in India there is to get a stamp so he could go out of the country. He was then arrested, put in jail for 61 days and he is now without travel documents in India. He can't leave.... He did go to the Consulate... with the intention of coming back and was arrested..." [ECF #1173 at 3; quoting Mr. Lipman's comments at a hearing]

### B. Defendant's Subsequent Detention

On or about May 22, 2015, as a result of Defendant's attempt to return, Defendant was arrested by the Indian Foreign Residents Registration Office and detained for 61 days until bail was posted and he was released from detention on July 23, 2015. [ECF # 97-1; "Declaration of Alex Lipman"]

### C. Defendant Cannot Leave the Jurisdiction of India

The Defendant is currently under the jurisdiction of the Indian judicial system and the Defendant cannot leave the territorial and legal jurisdiction of India without the permission of the Indian Court. As per Mr. Lipman, "[Defendant's]... passport was confiscated by the Indian authorities and [Defendant] is unable to leave the territorial jurisdiction of India without permission of the Indian Court." [ECF #97-1 at 2; "Declaration of Alex Lipman"]

### D. Contrary to the US' contentions, Defendant is not a "fugitive"

The Defendant is confined in the jurisdiction of India. Defendant cannot leave the jurisdiction of India until his pending criminal matter has been resolved. In addition, as per 18

7

US Code § 2466, the Fugitive Disentitlement Doctrine clearly states:

"(a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person—

(1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution—
      (A) purposely leaves the jurisdiction of the United States;
      (B) declines to enter or reenter the United States to submit to its jurisdiction; or
      (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; *and*

(2) **is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.**"[5]  (emphasis added)

Defendant is confined to the jurisdiction of India and cannot leave until his pending matter is resolved.

### III.    MS. AHMED'S COOPERATION

#### A. Ms. Ahmed's Notification that Defendant was Missing

When Ms. Ahmed could not determine the location of Defendant, she immediately informed Defendant's former counsel of record (in this instant matter) at that time that Defendant was missing. She subsequently informed counsel when she learned that Defendant was in India. Counsel informed the DOJ that Defendant was in India. It was only because Ms. Ahmed notified a person of authority that the DOJ did not expend any cost to locate the whereabouts of Defendant.

#### B. Ms. Ahmed's Notification that Defendant was in Custody

Ms. Ahmed further notified her counsel when she was told that Defendant was subsequently in custody in India. Again, it was only through Ms. Ahmed's notification to her

---

[5] https://www.law.cornell.edu/uscode/text/28/2466, accessed on June 4, 2019.

counsel who then told the DOJ, that they were aware that Defendant had tried to return to the United States and was subsequently detained in India due to those actions.

Thus, it was only because of Ms. Ahmed's actions that the government expended no resources to locate the Defendant.

## IV.  THE GOVERNMENT'S LACK OF SUPPORT FOR RELEASE OF FUNDS TO RETAIN COUNSEL FOR DEFENDANT

Defendant has been trying to get a release of funds for his legal representation; however, the SEC has at each request, opposed and the CT Court has denied so far each of Defendant's motions for funds to retain counsel. In addition, the Defendant has been in communication with AUSA Neil Gallagher in an effort to try to resolve the issues. However, it is Ms. Ahmed's understanding that the DOJ has stated that Mr. Ahmed must be represented by US counsel.

### A.  Securities and Exchange Commission ("SEC")

The SEC has, in every instance, thwarted the Defendant's attempts at having funds released to have a lawyer resolve his issues and return to the United States. In addition, Mr. Ahmed, who is *pro se* in the CT Case, has asked the CT Court multiple times for a release of his legally earned assets to be used for attorney representation and a resolution of his pending matters. However, the SEC has on each occasion, repeatedly opposed Mr. Ahmed's request for such funds. Mr. Neil Gallagher has been aware of this as well.

#### i.  Ruling that Defendant's Sixth Amendment Rights do not Apply

The Defendant made an application for fees also stating that his Sixth Amendment rights have attached and thus, he has a right to his untainted funds for legal defense. However, the Court denied the Defendant's motion, stating that any "critical stages" to which the Sixth Amendment right would attach do not apply to Defendant. [ECF #191; "Ruling on Defendant's

Motion for Release of Funds"]

### ii. Each Motion for Funds for Defendant's Legal Defense has been Opposed by the SEC and Denied by the Court

An attorney, Mr. Alex Lipman, made an appearance in the CT Case and requested funds to address all of Defendant's pending matters, including trying to effectuate Defendant's return to the United States. However, the SEC opposed that Motion and the Court denied the fees requested [ECF #191; "Ruling on Defendant's Motion for Release of Funds"]. Mr. Lipman subsequently withdrew from representing Defendant in the CT Case.

Defendant has filed multiple motions requesting release of funds for legal fees. [ECF #95, #325, #434, #589, #1135] However, in each instance (last motion still pending), even though it was indisputable that the asset freeze was over and above the estimated disgorgement amount by tens of millions of dollars, the Court has denied the Defendant's requests.[6] [ECF #191, #392, #652, #829]

Defendant also specifically put in an "Emergency Motion for Release of Funds for Legal Representation in India to be able to Return to the United States" [ECF #434, #470]. The SEC opposed the Motion and the Court subsequently denied Defendant's motion. [ECF #652]

### iii. The SEC's Refusal to Support Defendant's Requests for Funds so Defendant's Counsel could go to India

The Defendant's counsel (as of early 2016) – Mr. Alex Lipman – had volunteered to go to India for $35,000 to meet with Defendant, yet the SEC refused to release even that amount from an asset freeze of over $135MM.

As Mr. Lipman stated in his motion to withdraw in the CT Case, "counsel has

---

[6] Of Defendant's requests, the CT Court has only released $200 to be used towards medical purposes as Defendant is a cancer patient.

unsuccessfully sought to reach agreement with Plaintiffs, the SEC, and the United States Attorney's Office for the District of Massachusetts ("USAO-MA") regarding the release of a limited amount of funds to allow...Mr. Alex Lipman, to travel to India in order to work towards effectuating Mr. Ahmed's return to the United States. As background, given the pending case against Mr. Ahmed in India by the Indian Foreign Residents Registration Office, the purpose of the visit... would be to take all reasonable and prudent steps to effectuate Mr. Ahmed's return from India to the United States. The SEC has stated that it will oppose any motion for release of funds, including for the limited purpose outlined above." [ECF #210 at 2-3; "Motion to Withdraw"]

Due to these actions, Mr. Lipman did not go to India.

### B. AUSA and the US Attorney's Office

It is also Ms. Ahmed's understanding that Mr. Neil Gallagher has been in touch with the Defendant, but that he has stated that there is nothing that the DOJ can do in this situation until funds are released for Defendant to retain US counsel.

#### i. The DOJ is Not Able to Help Defendant get Funds to Retain Counsel

It is Ms. Ahmed's understanding that the Defendant was in touch with the DOJ and that an AUSA stated that "I know getting money for attorney's fees from the SEC has been an ongoing issue, but unfortunately we really can't help..." [ECF #589 at 6, "Defendant's Emergency Motion... to Release Funds for Legal Defense"]

#### ii. The DOJ's Stated Requirement that Defendant be Represented by US Counsel

It is also Ms. Ahmed's understanding that the AUSA has told the Defendant that he must be represented by US counsel: "...Mr. Ahmed is going to have to have a lawyer in the United States..." [ECF #589 at 6, "Defendant's Emergency Motion... to Release Funds for Legal

Defense"].  However, with the SEC's continued opposition to the release of funds for Defendant to retain counsel, it is Ms. Ahmed's understanding that it has not been possible for the Defendant to have US counsel.

## V.   A FORFEITURE WILL RESULT IN AN EXCESSIVE PENALTY ON MS. AHMED AND THE THREE MINOR CHILDREN

### A.  The Asset Freeze in the CT Case

The CT Court has continued the asset freeze on the entirety of Defendant's, Ms. Ahmed's and the other Relief Defendants' assets in the CT Case. This asset freeze is serving the "functional equivalent of a *supersedeas* bond, pending appeal" [ECF #1052 at 7; "Ruling on Defendant's Rule 60(b) Motion for Relief from Final Judgment and to Stay the Final Judgment"] to secure the SEC's judgment. While the Court has appointed a Receiver to manage the assets and determine how best to secure the judgment in that case, that issue (and others) are currently being briefed. There is no assurance that any assets will be released pending appeal.

### B.  The CT Court's Declaration of Nominee Status

The CT Court has ruled that Ms. Ahmed, her minor children and their entities are nominees for the Defendant. As a result, the CT Court has allowed the Receiver to collect against all of the Relief Defendants' assets. This means that not only are the entirety of Relief Defendant assets frozen, the bulk of them are being used to secure and potentially satisfy Defendant's judgment. This ruling is under appeal. However, in the interim, Ms. Ahmed and her children do not have access to funds to be able to satisfy the appearance bond amount of $9,000,000 should the Court declare such Bond forfeited.

Ms. Ahmed has tried but has been unable to get a job. The CT Court has allowed for a monthly living allowance to pay for her and her children's living expenses, including health care.

Because of the CT Court's asset freeze on the entirety of her assets, the continuation of the asset freeze as a "*supersedeas* bond" securing the SEC's judgment pending appeal, and a lack of ability to go elsewhere, Ms. Ahmed would have no ability to secure a residence for herself and her three minor children should this Court declare the bond forfeited.

### C. The Penalty Amounts and the Impact on Ms. Ahmed and the Minor Children

The CT Court has issued a judgment for $41.9 million of disgorgement, $1.5 million of pre-judgment interest and $21 million of penalty (approximately 50% of the disgorgement amount), resulting in a total judgment of approximately $64.4 million, plus an unknown amount.[7] [ECF #1054; "Amended Final Judgment"] This amount is being collected on assets including the Relief Defendant's assets to satisfy the judgment in that matter. It is indisputable that the Defendant legally made many tens of millions of dollars, but a substantial amount of that is being used for penalty.

Defendant is also liable for an additional maximum of $3.3 million of civil penalty in the related MA Civil matter[8] to this instant matter. The forfeiture of an additional $9 million bond, or the home which secured the bond and where Ms. Ahmed and the three minor children currently live, would be an additional penalty that would severely penalize Ms. Ahmed and most of all, the three minor children,[9] who are living in the United States and trying their best to deal with the situation.

Should the Court declare the bond forfeited and not waive or set aside or reduce the amount of the bond, or not stay the declaration of bond forfeiture until appeals have concluded in

---

[7] The Receiver has estimated $70.5 million is needed to secure the SEC's judgment of $64.4 million, plus an unknown amount of interest/gains on disgorged assets. Such is currently being briefed. The entire amount of judgment is under appeal.

[8] *SEC v. Kanodia*, et al., 15-CV-13052 (D. Mass.)

[9] The three minor children are ages 7, 11 and 12 years old.

the CT Case, Ms. Ahmed and the three minor children would effectively be paying at least $33 million of the penalty assessed against Defendant.  This Court should not allow that to happen.

## VI.  APPEAL PENDING IN CT CASE COULD ALLOW FOR ADDITIONAL FUNDS SUCH THAT THE HOME ITSELF DOES NOT NEED TO BE FORFEITED

Ms. Ahmed and the Relief Defendants in the CT case have an appeal pending in the Second Circuit Court of Appeals. Due to the current asset freeze imposed on Ms. Ahmed's assets, she would currently be unable to satisfy the Bond Requirement unless the District Court of Connecticut unfroze her assets. The Court in the CT Case has continued the asset freeze as a "*supersedeas* bond" pending appeal. Thus, until these issues have been adjudicated in the appellate courts, it is unlikely that the Court would release Ms. Ahmed's rightful assets to satisfy the bond amount. Depending on appellate result, it is entirely possible that Ms. Ahmed would have the funds necessary to satisfy the bond requirement without the seizure of her home.

In addition, Ms. Ahmed and her three minor children would have no place to go should the US forfeit the bond, as the entirety of her assets are frozen by Court Order and she would have no means to be able to secure a residence for herself and her three children pending appellate review of the issues in the CT case.

Ms. Ahmed has been residing in the home since 2007 and she and her three minor children (ages 7, 11, and 12 years old) currently reside in the home.

## VII.  THE COURT HAS THE JURISDICTION TO GRANT SUCH PRAYER AS STATED WITHIN

### A.  Rule 46(f)(2)(B) of the Federal Rules of Criminal Procedure

Federal Rule of Criminal Procedure 46(f) applies to bail forfeitures and states that "[t]he

court may *set aside in whole or in part a bail forfeiture* upon any condition the court may impose if… it appears that justice does not require bail forfeiture."

### B.   18 U.S.C. § 3146(d)

In addition, 18 U.S.C. § 3146(d) states that "[i]f a person fails to appear before a court as required… the judicial officer *may* … declare any property designated pursuant to that section to be forfeited to the United States." (emphasis added) The word "may" in this statute gives the Court discretion on whether or not to declare property forfeited.

Thus, the statutes that the government relies on allows the Court, in its discretion, to set aside in whole or in part a bail forfeiture (Rule 46(f)(2)(B) of the Federal Rules of Criminal Procedure) and also states that a Court *may*, but does not have to declare a property forfeited (18 U.S.C. § 3146(d)).


Wherefore, for the reasons within, Ms. Ahmed requests that the Court deny the government's request for declaration of forfeiture of bail or, in the alternative, set aside in whole or part any forfeiture it may order, or reduce the amounts requested, in the interests of justice. Alternatively, Ms. Ahmed requests that the Court stay any declaration of bond forfeiture or any bond forfeiture proceedings until appeals in the CT matter are concluded and Ms. Ahmed may be able to satisfy the bond requirement without the seizure of her home or have the funds to relocate herself and her three minor children.

Dated:  June 6, 2019

Greenwich, Connecticut


Respectfully Submitted,


By:  _/s/ Shalini Ahmed_ _____
      Shalini A. Ahmed
      505 North Street
      Greenwich, CT 06830
      Tel: 203-661-2704
      Email: shalini.ahmed@me.com
      *Pro Se*